NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **RUSSEL P. SWIATEK, et al.,** | Civil Action No. 08-6081 (TJB) |
| Plaintiffs, | |
| v. | MEMORANDUM OPINION |
| **BEMIS COMPANY, INC., et al.,** | |
| Defendants. | |

BONGIOVANNI, Magistrate Judge

     This matter comes before the Court upon motions *in limine* filed by Plaintiffs Russel P. Swiatek, George Munley and Marvin Barnett ("Plaintiffs") and Defendant Bemis Company, Inc. ("Bemis"). Plaintiffs and Bemis have each filed a single motion *in limine*. The Court has considered all arguments made in support of and in opposition to Plaintiffs and Bemis' motions. The Court considers both motions *in limine* without oral argument pursuant to FED.R.CIV.P. 78. For the reasons stated more fully below, both Plaintiffs and Bemis' motions *in limine* are granted in part and denied in part.

**I.    Background**

     Plaintiffs are former management-level employees of Bemis who worked at the company's Flemington, New Jersey plant. In 2007, Bemis determined that a reduction in force ("RIF") was necessary and that four positions at the Flemington plant would have to be terminated. As a result of the RIF, Plaintiffs were terminated on November 2, 2007. Plaintiffs allege that they were wrongfully terminated over other employees in retaliation for taking leave under the Family Medical Leave Act ("FMLA") (29 U.S.C. 2601 *et seq.*) and based on their age,

disability and race in violation of New Jersey's Law Against Discrimination (the "LAD") (N.J.S.A. 10:5-1 *et seq.*)  Plaintiff Marvin Barnett ("Barnett") also alleges that he was subjected to a racially hostile work environment under the LAD.  Plaintiffs filed a complaint in state court to this effect on November 10 2008.[1]  Bemis then removed the matter to this Court on December 11, 2008.  A trial is scheduled to begin in this matter on October 24, 2011.

## II. Discussion

The Court addresses each of the motions *in limine* in turn.  Because the Court writes for the parties, it presumes a familiarity with the factual and procedural history of this case.  As such, the Court references only the facts and law necessary to its consideration of the motions addressed herein.

### A. Legal Standard

Motions *in limine* may be used to shield the jury from unfairly prejudicial or irrelevant evidence.  *Ebenhoech v. Koppers Indus., Inc.*, 239 F.Supp. 2d 455, (D.N.J. 2002).  Decisions to preclude evidence, however, should not be made prematurely if the context of the trial would provide clarity.  *Id*. at 461 (citing *In re Japanese Elec. Prods. Antitrust Litig*., 723 F.2d 238, 260 (3d Cir. 1983)).

---

[1]Plaintiffs also initially raised allegations claiming that their termination constituted a violation of the clear public policy of the state of New Jersey (Count 2), amounted to unlawful retaliation in violation of the New Jersey Conscientious Employee Protection Act (N.J.S.A. 34:19-1 *et seq.*) (Count 4), involved the now terminated defendant's, Warren Maruca's, individual liability under the LAD (Count 5) as well as Bemis' liability under the doctrine of respondeat superior (Count 6).  Plaintiffs, however, voluntarily withdrew these counts of their Complaint during the December 7, 2010 hearing on Defendants' motion for summary judgment.  (*See* 12/7/2010 Tr. at 4:4 - 5:9)

B.      **Plaintiffs' Motion**

Via Plaintiffs' motion *in limine*, Plaintiffs seek to preclude Defendants from (a) introducing testimony or employment records concerning the job performance, discipline (or lack thereof), job seniority or experience of Ed Burg, Chris Guldner, Tim Bullock, Nelson Storks and Linnie McGlone (collectively, the "retained employees") and (b) introducing evidence concerning Plaintiffs' job performance as a basis for the termination of their employment.  The Court addresses each of Plaintiffs' requests in turn.

1.   **Motion to Preclude Testimony or Employment Records Concerning the Job Performance, Discipline, Job Seniority or Experience of Ed Burg, Chris Guldner, Tim Bullock, Nelson Storks and Linnie McGlone**

a.   **Job Performance and Discipline**

Plaintiffs argue that Bemis should be precluded from introducing any testimony or employment records concerning the job performance and discipline (or lack thereof) of the retained employees both because such evidence is irrelevant under FED.R.EVID. ("Rule") 401 and because the introduction of same is not warranted under Rule 403.  With respect to relevance, Plaintiffs argue that the unambiguous testimony of Warren Maruca ("Maruca") is that he selected Plaintiffs for termination based on the following four factors: cost control, centralization of duties, experience and seniority (Ex. D to Pl. Br. at 52:21-53:8) and that performance was never taken into account when selecting Plaintiffs for termination.  (*Id*. at 246:14-19).  As a result, Plaintiffs argue that evidence concerning the job performance and discipline of the retained employees will not tend to "make the existence of any fact that is of consequence to the

3

determination of the action more probable or less probable than it would be without the evidence" and that, as such, any evidence related to same is irrelevant under Rule 401.

In addition, Plaintiffs argue that evidence regarding the retained employees' job performance should be excluded pursuant to Rule 403. Rule 403 permits the Court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence." Given the lack of relevance of the retained employees' job performance and disciplinary records, Plaintiffs claim that evidence regarding same should be precluded because its introduction would "only result in confusion of the issues, a [sic] mislead jury, and a needless waste of the Court's time." (Pl. Br. at 3). Plaintiffs further argue that such evidence should be precluded under Rule 403 because it would be extremely prejudicial to permit Bemis to introduce evidence related to the retained employees' job performance and discipline, such as their personnel files, when Bemis refused to produce such records during discovery. Under these circumstances, Plaintiffs' contend that Bemis should be precluded from introducing evidence relevant to the retained employees' job performance and discipline under Rule 403 because the probative value, if any, of such evidence is substantially outweighed by the danger of unfair prejudice. Plaintiffs argue that this is especially true in light of the fact that Bemis produced Plaintiffs' employee files while at the same time refusing to produce the retained employees' personnel files, thereby effectively using the materials at issue as both a sword and shield.

The Court in large part agrees with Plaintiffs that evidence concerning the retained employees' job performance and discipline is irrelevant in light of Maruca's testimony that the

4

only factors considered in deciding to terminate Plaintiffs were cost control, centralization of duties, experience and seniority. However, the Court finds that Plaintiffs' motion to preclude the introduction of evidence related to the retained employees' job performance and discipline largely misses the mark. Bemis has affirmatively stated that it in no way intends to adduce evidence regarding the retained employees' job performance. (*See* Bemis Opp. Br. at 2). Bemis, however, does seek to preserve its right to rebut any evidence Plaintiffs' may proffer regarding the retained employees' job performance and discipline. In layman's terms if Plaintiffs "open the door" with respect to the retained employees' job performance and discipline at trial, then Bemis wants the opportunity to introduce job performance and discipline related evidence.

The Court finds that it is premature to prospectively rule on the admissibility of evidence that may or may not be proffered at trial. As a result, the Court shall not, at this juncture, preclude Bemis from introducing testimony and evidence concerning the retained employees' job performance and discipline to rebut similar evidence potentially introduced by Plaintiffs. If an issue arises concerning the retained employees' job performance and discipline during trial, the Court shall address any objections to the introduction of evidence concerning same at that time.

As a result, Plaintiffs' motion is granted to the extent it seeks to preclude Bemis from directly introducing evidence of the retained employees' job performance and discipline. It is, however, denied in all other respects.

### b. Job Seniority and Experience

Plaintiffs seek to preclude Bemis from introducing testimony or employment records concerning the job seniority and experience of the retained employees. With respect to Plaintiff Russell P. Swiatek ("Swiatek"), Plaintiffs' argue that such evidence is irrelevant under Rule 401

5

and therefore its introduction should be precluded. In this regard, Plaintiffs claim that Maruca testified that the only factors considered in determining to terminate Swiatek were "need, cost cutting measures, centralization of duties" and that Maruca specifically responded "no" when asked if any other factors were considered. (Ex. D to Pl. Br. at 154:2-5). As such, Plaintiffs contend that evidence concerning job seniority and experience as it pertains to Swiaktek is irrelevant.

  Plaintiffs also argue that Bemis should be precluded from introducing any testimony regarding the retained employees' job seniority or experience because the introduction of such evidence would be unfairly prejudicial under Rule 403. In this respect, Plaintiffs claim that they would be prejudiced by the introduction of testimony and employment records concerning the retained employees' job seniority and experience because Bemis refused to produce the personnel files for the retained employees during the course of discovery, preventing Plaintiffs from investigating the validity of any claims made with respect to the retained employees' job seniority and experience. Plaintiffs argue that Bemis should be prevented from using information concerning job seniority and experience as both a sword and a shield, selectively producing information concerning Plaintiffs' personnel files but refusing to produce similar information for the retained employees.

  With respect to relevance, the Court finds that under Rule 401 information concerning job seniority and experience is relevant even as it pertains to Swiatek. It is true, as Plaintiffs' assert, that Maruca both testified that he considered "need, cost cutting measures, [and] centralization of duties" in deciding to terminate Swiatek and responded "no" when asked if he considered "anything else" in determining to terminate Swiatek. (Ex. D to Pl. Br. at 153:25 - 154:5).

6

However, it is also true that Maruca had previously testified that he considered all of the following factors in determining which positions to eliminate: "cost control, . . . centralization efforts, seniority, experience on the job[.]" (Ex. D to Pl. Br. at 53:5-7). In light of this earlier testimony, the Court finds that evidence pertaining to the retained employees' job seniority and experience is still relevant even as it pertains to Swiatek and therefore admissible under Rule 402. As a result, the Court shall not preclude Bemis from introducing testimony or employment records regarding same on this ground. Plaintiffs, however, are of course free to examine Maruca's apparent inconsistent testimony at trial.

The Court further finds that there is no reason, at least at this time, to preclude Bemis from introducing testimony or employment records regarding the retained employees' job seniority and experience based on Rule 403. While Bemis may not have produced the retained employees' personnel files during discovery, Bemis did produce documents concerning the retained employees' job seniority and experience. Moreover, during the course of discovery Plaintiffs never raised an issue over Bemis' production of documents concerning the retained employees' job seniority and experience and the Court never compelled Bemis to produce additional information on this topic.[2] Under these circumstances, the Court finds that, contrary to

---

[2] The Court notes that on January 11, 2010, Plaintiffs submitted a letter to the Court regarding various discovery issues, one of which dealt with Plaintiffs' request for more specific answers to discovery requests. The Court set forth a process by which to address the parties' discovery issues, including Plaintiffs' request for more specific answers to discovery requests via its Letter Order entered on January 13, 2010 [Docket Entry No. 13]. Indeed, the parties were directed to meet and confer regarding their outstanding discovery issues and instructed to report to the Court no later than February 15, 2010 with a status update. While they raised other issues with the Court, Plaintiffs never raised any issues with respect to Defendants' production of information concerning the retained employees' job seniority or experience. Any attempt to do so now comes too late.

7

Plaintiffs' arguments, Plaintiffs will not be unfairly prejudiced if Bemis is permitted to rely on the produced documents and proffer testimony regarding the retained employees' job seniority and experience, two factors that are clearly relevant to Bemis' RIF decision. Nor does the Court find that Bemis is using information concerning job seniority or experience as both a sword and a shield. Consequently, Plaintiffs' motion *in limine* is denied. Should, however, a specific issue arise during the course of trial with respect to a particular document or line of questioning, Plaintiffs are free to raise an objection at that time.

    **2.  Motion to Preclude the Introduction of Evidence Concerning Plaintiffs' Job Performance as a Basis for the Termination of their Employment**

  While not extensively briefed, Plaintiffs argue that Bemis should be precluded from introducing evidence concerning Plaintiffs' own job performance as a basis for their termination. Plaintiffs argue that such information is irrelevant in light of Maruca's testimony that he selected Plaintiffs for termination based on the following four factors: cost control, centralization of duties, experience and seniority (Ex. D to Pl. Br. at 52:21-53:8) and that performance was never taken into account when selecting Plaintiffs for termination. (*Id*. at 246:14-19).

  As it did with respect to Plaintiffs' arguments concerning evidence related to the retained employees' job performance and discipline, the Court in large part agrees with Plaintiffs that evidence concerning their job performance is irrelevant in light of Maruca's testimony that the only factors considered in deciding to terminate Plaintiffs were cost control, centralization of duties, experience and seniority. Again, however, the Court finds that Plaintiffs' motion to preclude the introduction of evidence related to Plaintiffs' job performance largely misses the mark. Bemis has confirmed that performance was not a criterion used to decide which

8

employees would be selected for termination during the RIF.  (*See* Bemis Opp. Br. at 1).  Bemis, however, seeks to preserve its right to rebut any evidence potentially proffered by Plaintiffs to establish that Plaintiffs performed their jobs well and should not have been selected for termination.

As it did before, the Court finds that it is premature to prospectively rule on the admissibility of evidence that may or may not be proffered at trial.  As a result, the Court shall not, at this juncture, preclude Bemis from introducing testimony and evidence concerning Plaintiffs' job performance to rebut similar evidence potentially introduced by Plaintiffs.  If an issue arises concerning the retained employees' job performance and discipline during trial, the Court shall address any objections to the introduction of evidence concerning same at that time.

### C.  Bemis' Motion

Via its motion *in limine*, Bemis seeks to preclude Plaintiffs from proffering evidence that (a) Bemis has a history of discriminating against African-Americans at the Flemington plant; (b) Maruca made the comment "let's call a spade a spade" in the presence of Barnett (who is African-American) and others; (c) Bemis terminated Plaintiffs' employment because they were disabled; and (d) a smaller percentage of employees were terminated at other Bemis plants in the same division as part of the RIF.  The Court addresses each of Bemis' requests in turn.

#### 1. Motion to Preclude the Introduction of Evidence Offered to Show that Bemis has a History of Discriminating Against African-Americans at the Flemington Plant

Bemis seeks to bar evidence offered to show that Bemis has a history of discriminating against African-Americans at the Flemington Plaint arguing that such evidence is irrelevant pursuant to Rule 401 and therefore not admissible under Rule 402 and that, if introduced, the

probative value of such evidence would be outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury.  *See* Rule 403.  Specifically, Bemis seeks to prevent Plaintiffs from introducing evidence regarding two other African-American individuals employed by Bemis at the Flemington plant: Lester Harmon ("Harmon") and Gregory Dowdell ("Dowdell").  Plaintiffs seek to introduce evidence concerning Harmon and Dowdell's experiences at Bemis to establish the pretextual nature of Barnett's termination and of the hostile work environment present within the Flemington facility.  The Court addresses the admissibility of evidence pertaining to Harmon and Dowdell separately below.

      **a. Harmon**

  Harmon commenced employment with Bemis in July 1997.  In January 2003, he filed suit in New Jersey state court against Bemis, his supervisor and Mauca alleging race discrimination and harassment in violation of the LAD.  The specific instances of alleged discrimination that were at issue in that matter occurred between January 1991 and September 2002.  Harmon's claims against Maruca were dismissed on summary judgment and the remainder of the case ultimately settled.  Plaintiffs seek to introduce evidence concerning Harmon's experience at Bemis to show the pretextual nature of Barnett's termination as well as to establish a hostile work enviornment.

  Bemis seeks to exclude all evidence related to Harmon's experience at the company arguing that Harmon's allegations are too remote in time from the allegations raised by Barnett here to be relevant to Barnett's claims and should therefore be excluded under Rule 402.  Bemis also argues that even if marginally relevant, evidence concerning Harmon, including Harmon's testimony, should be excluded under Rule 403 because if permitted, the introduction of such

evidence would result in a trial of Harmon's claims of racial discrimination and harassment, which would unnecessarily confuse the issues to be decided in this case and thereby unfairly prejudice Bemis.

The Court notes that while the parties engaged in certain document discovery concerning Harmon (namely, Bemis produced Harmon's 472-paged deposition transcript and Maruca's 158-paged deposition transcript from the Harmon matter), the Court determined that Plaintiffs were not entitled to depose Harmon because the information sought concerning Harmon was "remote in time to the alleged incidents in this case" and because the deposition would be "burdensome, unnecessary and not likely to lead to relevant evidence." (3/8/10 Order at 2; Docket Entry No. 16). The Court further notes that Plaintiffs never appealed any aspect of that decision.

In light of the fact that the Court not only precluded Plaintiffs from deposing Harmon because his testimony would be burdensome or cumulative given Bemis' production of the earlier deposition transcripts, but also because Harmon's deposition was not likely to lead to relevant evidence, the Court would be hard-pressed to determine that his testimony would now be relevant and admissible under Rules 401 and 402. Nevertheless, even had the Court not previously determined that Harmon's proposed testimony lacked substantial relevance because Harmon's allegations of race discrimination and harassment, the last of which involved an incident that occurred in September 2002, were "remote in time to the alleged incidents in this case[,]" the Court would do so now. (3/8/10 Order at 2; Docket Entry No. 16).

Barnett did not begin working for Bemis until February 2005, nearly 2½ years after the last incident of discriminatory conduct alleged by Harmon. Furthermore, the first incident of discriminatory conduct alleged by Barnett did not occur until the Spring of 2006, over 3½ years

after the last incident of discriminatory conduct alleged by Harmon.  Thus, while evidence of past discrimination directed at other employees is generally relevant both to the question of whether a defendant intentionally discriminated against a plaintiff and whether, under the totality of the circumstances, a work environment is hostile or offensive (*see Hurley v. Atlantic City Police Dept.*, 933 F.Supp. 396, 411-12 (D.N.J. 1996)), here, given the delay between the incidents involving Harmon and those involving Barnett, the Court concludes that the prior acts concerning Harmon are too remote as a matter of law to be relevant to the question of discriminatory intent.  *See Ansell v. Green Acres Contracting Co., Inc.*, 347 F.3d 515, 524 (3d Cir. 2003).

Nevertheless, even if the Court determined that Harmon's experience at Bemis was marginally relevant, the Court would exclude such evidence under Rule 403.  Indeed, in light of the marginal, if any, relevance, the Court finds that the danger of unfair prejudice to Bemis greatly outweighs any probative value the introduction of the remote evidence regarding Harmon would have.  *See Stair v. Lehigh Valley Carpenters Local Union 600*, 813 F.Supp. 1116, 1120 (E.D. Pa. 1993).  This is especially true in light of the fact that introducing evidence concerning Harmon's experience at Bemis will likely confuse the issues and lead to a mini-trial concerning whether Harmon was discriminated against, which will distract the jury from deciding the actual issues in this matter.  As a result, the Court shall preclude the introduction of any evidence concerning Harmon and grant Bemis' motion in this regard.

      b.  **Dowdell**

Dowdell started working for Bemis in 2008, several months after Barnett's employment with the company was terminated.  After Dowdell began working for Bemis, another employee,

Tom Trexler ("Trexler"), placed a "noose" on Dowdell's workbench. Dowdell reported the incident and, after an investigation by Bemis, Trexler was advised that he had violated Bemis' harassment policy, suspended for three days and warned that any similar future conduct would lead to his immediate termination. Plaintiffs seek to introduce evidence concerning this incident to establish the pretextual nature of Barnett's termination as well as to establish that a hostile work environment existed in Bemis' Flemington plant and argue that evidence of subsequent acts of discrimination and harassment may be relevant to a race discrimination and hostile work environment claim.

Bemis seeks to exclude all evidence related to the "noose" incident, arguing that it is irrelevant and, as such, inadmissible under Rule 402. In reaching this conclusion, Bemis relies on the Court's Order entered on March 8, 2010, which denied Plaintiffs' request to depose Dowdell because "the Dowdell incident occurred significantly after the incident here; . . . Dowdell did not raise direct allegations against Maruca; and . . . conducting [the] deposition[] of . . . Dowdell would be burdensome, unnecessary and not likely to lead to relevant evidence[.]" (3/8/10 Order at 2; Docket Entry No. 16). Bemis argues that none of these facts have changed since the Court reached the aforementioned conclusion and that Plaintiffs' never appealed same.

The Court agrees with Plaintiffs that subsequent actions by an employer against other co-workers may be relevant to the question of intent to discriminate. *See Ansell*, 347 F.3d at 524. The Court here, however, has already determined that evidence concerning the "noose" incident involving Dowdell is not relevant to Barnett's claims. Contrary to Plaintiffs' arguments, the Court did not merely determine that Dowdell's deposition was not warranted, leaving open the possibility that evidence concerning the "noose" incident was still relevant. Instead, in light of

13

the fact that the "noose" incident occurred several months after Barnett was terminated and did not involve a direct allegation against Maruca, the Court determined that Dowdell's testimony was irrelevant. (*See* 3/8/10 Order at 2 (finding that Dowdell's deposition was "not likely to lead to relevant evidence"; Docket Entry No. 16). Nothing has changed since the Court issued that Order, an Order that Plaintiffs' never appealed. If Dowdell's testimony was irrelevant in March 2010, any testimony Plaintiffs' seek to adduce now is likewise irrelevant. As a result, because the Court has determined that evidence concerning the "noose" incident is irrelevant and therefore inadmissible under Rule 402, the Court grants Bemis' motion to preclude the introduction of evidence concerning same.[3]

### 2. Bemis' Motion to Exclude All Evidence Proffered to Establish that Maruca Made the Comment "Let's Call a Spade a Spade"

Bemis seeks to preclude the introduction of any evidence proffered to establish that Maruca said "let's call a spade a spade." Bemis argues that such evidence should be excluded because the saying "let's call a spade a spade" is not race-based and because Maruca made the statement more than two years before Barnett filed his hostile work environment claim. As a result, Bemis argues that the comment was made outside of the two year statute of limitations that applies to hostile work environment actions under the LAD. Bemis also argues that Maruca's comment was not part of a continuing chain of discrimination but was merely one of a few isolated and sporadic occurrences.

---

[3]The Court also finds that it would be unfairly prejudicial under Rule 403 to permit Plaintiffs to adduce evidence concerning the "noose" incident when no substantial discovery has taken place regarding same. This is particularly true where the lack of discovery stems from the Court's Order denying Plaintiffs' request to conduct same; an Order that Plaintiffs never appealed.

Plaintiffs oppose Bemis' motion.  First, Plaintiffs argue that any attempt to claim that Maruca's comment was not race-based is without merit because of the manner in which it was made.  In this regard, Plaintiffs allege that Maruca pointed at Barnett while saying "let's call a spade a spade."  In addition, Plaintiffs argue that Barnett's reliance on the comment is not barred by the LAD's two year statute of limitations because the comment represented simply part of a continuing chain of discrimination and is therefore admissible under the continuing violation doctrine.

Absent a problem with the applicable statute of limitations, the Court finds that Maruca's comment "let's call a spade a spade" is relevant and admissible under Rules 401 and 402.  While the parties may disagree over the context in which Maruca made this statement and whether, in light of that context, the statement is racially offensive, the Court finds that that disagreement is one appropriately left to the jury.  Consequently, the Court will not preclude Plaintiffs from proffering evidence concerning the statement on this ground.

With respect to the statute of limitations, the Court finds that unless Maruca's statement qualifies as being part of a continuing chain of discrimination, the comment would be barred by the LAD's two year statute of limitations that applies to hostile work environment claims. *Montells v. Haynes*, 133 N.J. 282, 294-95 (1993) (finding that two year statute of limitations applies to hostile work environment claim brought under LAD).  Under the continuing violation doctrine, "a plaintiff may pursue a claim for discriminatory conduct if he or she can demonstrate that each asserted act by a defendant is part of a pattern and at least one of those acts occurred within the statutory limitations period." *Shepard v. Hunterdon Developmental Ctr.*, 174 N.J. 1, 6-7 (2002).  However, the "continuing violation doctrine applies only where "the harassment is

'more than the occurrence of isolated or sporadic acts of intentional discrimination.'" *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 755 (3d Cir. 1995) (quoting *Jewett v. Int'l Tel. and Tel. Corp.*, 653 F.2d 89, 91 (3d Cir. 1981), *cert. denied*, 454 U.S. 969 (1981)).  In distinguishing between isolated or sporadic acts versus a persistent, continual pattern of discrimination, the Court applies the three factor analysis set forth first by the Fifth Circuit in *Berry v. Board of Supervisors of Louisiana State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983) and later adopted by both the Third Circuit and the State of New Jersey.  *See Rush v. Scot Specialty Gases*, 113 F.3d 476, 481 (3d Cir. 1997); *Bolinger v. Bell Atl.*, 330 N.J. Super. 300, 307 (App. Div. 2000), *certif. denied*, 165 N.J. 491 (2000).

> The first is subject matter.  Do the alleged acts involve the same type of discrimination, tending to connect them in a continuous violation?  The second is frequency.  Are the alleged acts recurring . . . or more in the nature of an isolated work assignment or employment decision?  The third factor, perhaps of most importance, is degree of permanence.  Does the act have the degree of permanence, which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Berry*, 715 F.2d at 981.

Here, Plaintiffs argue that Maruca's comment "let's call a spade a spade" is part of an ongoing, persistent pattern of harassment and discrimination suffered by Barnett while working at Bemis.  The other incidents of harassment and discrimination that make-up the alleged pattern include (1) Barnett repeatedly receiving his paychecks a week or more later than other employees because his would be processed at the end; (2) Barnett being informed that Bemis was an English-speaking company after he was heard speaking Spanish to another employee; (3) Barnett

being forced to continue supervising another employee who physically assaulted him; and (4) Barnett being terminated based, in part, on his race. (*See* Pl. Opp. Br. at 10-11). While Bemis argues that the aforementioned series of events do not, when taken together, support a racial harassment claim and, at best, are isolated or sporadic acts of discrimination, the Court finds that under *Berry*, the series of incidents alleged by Plaintiffs are similar and frequent enough to support a claim that Bemis engaged in a pattern of harassing Barnett. As a result, the Court finds that Plaintiffs are entitled to rely on the continuing violation doctrine with respect to Maruca's comment "let's call a spade a spade" and that, as such, introduction of evidence concerning that comment is not barred by the LAD's two year statute of limitations. Consequently, Bemis' motion to preclude evidence that Maruca made the statement "let's call a spade a spade" is denied.

### 3. Bemis' Motion to Preclude Evidence Proffered to Prove that Bemis Terminated Plaintiffs' Employment Because They Were Disabled

Bemis seeks to preclude the introduction of any evidence proffered to show that Bemis terminated Plaintiffs' employment because they were disabled. Bemis argues that such evidence should be excluded because during oral argument on Bemis' motion for summary judgment, Plaintiffs represented that they were not pursuing a claim that Plaintiffs were disabled at the time of their termination, but instead were pursuing claims that Plaintiffs were perceived to be disabled. (Bemis. Br. at 9). Bemis additionally argues that such evidence should be precluded because Plaintiffs lack competent medical evidence necessary to actually prove that they were disabled. As a result, Bemis contends that Plaintiffs "should be barred from arguing to the jury

17

that they were disabled under the LAD, and their disability discrimination claims should be limited to perceived disability discrimination." (*Id*. at 11).

Plaintiffs oppose Bemis' motion arguing that there is nothing inconsistent about their position that Plaintiffs were "members of a protected class on the basis of disability" while also representing during the argument held on Defendants' motion for summary judgment that they "were terminated as a result of a perceived disability." (Pl. Opp. Br. at12). In addition, Plaintiffs argue that they need not proffer competent medical evidence with respect to Plaintiffs' disabilities because the conditions Plaintiffs suffered from were readily apparent and that is all that the law requires: Swiatek took FMLA leave after being diagnosed with an enlarged heart and congestive heart failure; Barnett took FMLA leave in order to undergo retinal surgery; and Plaintiff George Munley ("Munley") took FMLA leave in order to undergo knee surgery. (*Id*.) Further, Plaintiffs contend that if Bemis believes that Plaintiffs lack sufficient evidence to demonstrate a case of disability discrimination, then Bemis should file the appropriate motion at the time of trial. As a result, Plaintiffs argue that Bemis' motion should be denied.

On December 7, 2010, the District Court held oral argument on Bemis' motion for summary judgment. During that hearing, the District Court explicitly questioned Plaintiffs in order to "pin . . . down" the substance of their disability claims. (12/7/10 Tr. at 39:2; Docket Entry No. 24). The District Court informed Plaintiffs that "I don't understand the disability part. I need you to articulate it. Because they had been treated and they were back to work and they were not asking for any special treatment." (*Id*. at 40:4-7). Plaintiffs responded that "[i]t was a perceived disability, Your Honor. That's what I'm saying. It's a perceived disability by Mr. Maruca. I don't think that they were disabled at the time. **We're not claiming that they were.**

18

**We're claiming they were perceived to be disabled because they had these conditions**." (*Id*. at 40:8-13 (emphasis added)). The District Court went on to confirm that Plaintiffs' disability claims were based on Plaintiffs' perceived disabilities: "Okay. So, then that's your disability claim. It's based upon perceived disability, as alleged." (*Id*. at 41:12-13). Plaintiffs responded "[y]es." (*Id*. at 41:14). In light of the representation made by Plaintiffs during the December 7, 2010 oral argument, the Court finds that Plaintiffs waived the opportunity to pursue any claims that they were terminated by Bemis because they were actually disabled. Consequently, Bemis' motion to preclude the introduction of evidence to establish that Plaintiffs were actually disabled at the time they were terminated is granted.

Nevertheless, Plaintiffs clearly did not waive their disability claims based on perceived disability and Plaintiffs shall not be precluded from introducing evidence to support these claims. Relevant to Plaintiffs' allegations that they were wrongfully terminated under the LAD based on their perceived disability is evidence pertaining to the medical conditions each Plaintiff suffered and the Court shall not prospectively preclude the introduction of such evidence at this time. *See* Rules 401 and 402. Should Bemis believe that an objection is appropriate to the introduction of a specific piece of evidence during the course of the trial, Bemis is free to lodge its objection at that time. As a result, Bemis' motion is denied in all other respects.

    **4.**    **Bemis's Motion to Preclude Evidence Proffered to Establish that Smaller Percentages of Employees Were Terminated at Other Plants in the Same Division as Part of the RIF**

Bemis argues that statistical evidence concerning the elimination of employees at Bemis' other plants compared to those terminated at the Flemington plant is not probative of discrimination and is therefore irrelevant to Plaintiffs' case under Rule 401 and inadmissible

under Rule 402. Further Bemis argues that even if the statistical evidence Plaintiffs seek to proffer has some probative value, that value is outweighed by the likelihood that the evidence would confuse the issues and mislead the jury. As such, Bemis argues that the evidence should be precluded under Rule 403. Plaintiffs offer no opposition to Bemis' arguments concerning the statistical evidence.

In light of the fact that Plaintiffs have offered no opposition to Bemis' request, the Court grants Bemis' motion to exclude statistical evidence comparing the percentage of employees terminated at the Flemington plant with the percentage of employees terminated at Bemis' two other plants in the same division.

### III.    Conclusion

For the reasons stated above, Plaintiffs and Bemis' motions *in limine* are granted in part and denied in part. An appropriate Order follows.

Dated: October 7, 2011

                                            s/Tonianne J. Bongiovanni
                                            **HONORABLE TONIANNE J. BONGIOVANNI**
                                            **UNITED STATES MAGISTRATE JUDGE**